AMPARO GONZALEZ, Special Adm'r of the Estate of Jose Gonzalez, Deceased, Plaintiff-Appellant, v. KENNEDY MOBIL SERVICE, INC., *et al.*, Defendants-Appellees.

First District (6th Division)    No. 1—94—1923

Opinion filed August 18, 1995.

John Bernard Cashion and Peter F. Geraci, both of Chicago, for appellant.

Howard K. Priess II and Joseph C. Gergits, both of Tressler, Soderstrom, Maloney & Priess, of Chicago, for appellees.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Amparo Gonzalez, brought this action as special administrator of the estate of Jose Gonzalez to recover damages for personal injuries sustained by the decedent in an accident which occurred at a gasoline service station owned by defendant Mobil Oil Corporation (Mobil) and operated by codefendant Kennedy Mobil Service, Inc. (Kennedy Mobil). On June 10, 1993, the trial court entered an order granting Mobil's motion for summary judgment and on May 10, 1994, entered an order granting Kennedy Mobil's motion for a directed verdict. Plaintiff appeals, contending the trial court erred in granting the respective motions.

The relevant facts are as follows. On August 10, 1989, the decedent was at the Kennedy Mobil service station, located in Chicago, filling his automobile with gasoline. The opening to the gas tank was located above the middle of the rear bumper, and the decedent was standing in back of his automobile holding the gasoline hose and nozzle. Shortly before this time, codefendant Rosario Injerra arrived at the service station to pick up his car, which had been there overnight for repairs. At a deposition, Injerra testified that he paid the repair bill and proceeded to get into his car when he noticed that one of the tires was flat. He then drove his car to the entrance of the service station's garage to inflate the tire with an air pump located inside the garage. He opened the driver's side door, exited the car, closed the door, and walked into the garage. Before exiting the vehicle, Injerra placed the car in park; he left the keys in the ignition with the engine running. About four seconds after he entered the garage, Injerra heard a loud scream. Injerra walked back outside, saw the decedent take three steps and then fall to the ground. He also observed that the rear of his car was about five feet from the rear of the decedent's car.

The decedent testified at a deposition that as he was standing at the rear of his vehicle facing the gas pump, a car came up behind him and hit his legs, throwing him forward against his vehicle and pinning him between the two vehicles. (The decedent died in 1993 as the result of injuries suffered in this accident.)

Injerra further stated at his deposition that the gasoline hose that the decedent had been using was broken, and gasoline was pouring onto the ground. The engine of Injerra's car was still running, so Injerra ran over to the car and drove it away from the puddle of gasoline.

Injerra testified that he was aware of the danger of leaving a car unattended with the keys in the ignition and the engine running.

Prior to the accident he had observed signs posted at other service stations warning customers not to leave the engines of their vehicles running while pumping gas. According to Injerra, no one from Kennedy Mobil told him to leave the engine running while he inflated the tire.

In her amended complaint, plaintiff alleged that Kennedy Mobil and Manop Suesuntisook, its president, were negligent in failing to: (1) have an attendant on duty to monitor and manage motor vehicles on the service station premises; (2) have an attendant on duty who had a clear view of the gasoline pumps and adjacent areas; (3) warn the decedent that there was an unattended motor vehicle moving about the premises; and (4) have an effective method in place for prohibiting motor vehicles from being left unattended with the motor running while on the premises. Plaintiff alleged that Mobil was negligent in failing to: (1) post a permanent sign on the premises warning motorists not to leave the engines of their vehicles running while the vehicles were unattended (plaintiff has since abandoned this claim); (2) provide an adequate view from the business office of all areas of the station frequently used by customers; (3) provide adequate electronic surveillance devices which would enable employees in the office to have an adequate view of areas of the station used by customers; and (4) periodically inspect the premises with a view toward discovering whether the premises were reasonably safe. Plaintiff also alleged negligence on the part of Injerra. (Injerra neither answered the complaint nor appeared at trial. On May 10, 1993, plaintiff obtained an order of default against Injerra. No issues are raised in this appeal concerning Injerra.)

Suesuntisook stated in an affidavit that he had operated the service station as a sole proprietor from 1972 to 1975 and thereafter pursuant to a franchise agreement with Mobil. Suesuntisook further stated that there had been no accidents involving motor vehicles on Kennedy Mobil's premises during the 20 years he had operated the service station. The affidavit established that on the day of the accident, five $10 1/4$-inch by 18-inch signs were posted, one at each of five gas pump islands, which stated, "NO SMOKING, STOP ENGINES."

On January 19, 1993, Mobil and Kennedy Mobil each filed a motion for summary judgment. Defendants contended that they owed no legal duty to the decedent to protect him from the type of harm he suffered as a result of the negligent conduct of a third party (Injerra). In making this argument, defendants relied almost exclusively on this court's decision in *Anderson v. Woodlawn Shell, Inc.* (1985), 132 Ill. App. 3d 580, 478 N.E.2d 10, a case factually similar to the

present case. The trial court granted Mobil's motion, finding that as merely a lessor who was not situated on the service station premises, Mobil had no opportunity to attempt to prevent the accident from occurring. The trial court, however, denied the motion of Kennedy Mobil. Although the court determined that "the *Anderson* case *** close[s] the door on a claim that the station employees should have foreseen the possibility of this kind of an accident and taken steps to guard against it," it nevertheless ruled that the initial distance between Injerra's and the decedent's cars created a question of fact as to "whether the station employees had an opportunity to take action, and whether they failed to take action" within the period of time that Injerra's car began to move and when it struck the decedent. The case proceeded to trial against Injerra and Kennedy Mobil.

Plaintiff called Michael Rosario to testify. Rosario, a Kennedy Mobil mechanic who was working in one of the three garage bays at the time of the accident, testified that he did not see how the accident occurred or where either of the two cars involved in the accident was situated prior to the accident. At no time did Rosario see Injerra's car in motion. The first indication Rosario had that an accident had occurred was when he heard people screaming for someone to call an ambulance. Rosario stated that the service station was equipped with a loud speaker system which enabled the sales clerk in the office to talk to customers at the pumps.

Suesuntisook was called by plaintiff as an adverse witness. He reiterated what he had stated in his affidavit and testified further that he first saw Injerra's vehicle after the accident occurred. He did not know where or how the accident occurred or where Injerra's vehicle was prior to the collision. Nor did anyone employed at Kennedy Mobil, to his knowledge, know how the accident occurred.

Plaintiff also called John O'Malley, a traffic specialist employed by the Chicago police department. O'Malley conducted an investigation at the service station on the date of the accident. O'Malley spoke with Injerra shortly after he arrived at the service station. Counsel for Kennedy Mobil objected to O'Malley's hearsay testimony concerning Injerra's statements. The court ruled that the jury would be instructed prior to deliberations to disregard this testimony in determining the liability of Kennedy Mobil. The court agreed to treat Kennedy Mobil's hearsay objection to the testimony relating Injerra's statements as a continuing objection.

O'Malley testified that Injerra told him he had driven his car near an air pump, and when he exited the car he left the engine running. Injerra said that he slammed the door and started to walk away when his car suddenly started moving backward in a semi-

circle and then struck the decedent. O'Malley sketched a diagram of the vehicle's course of movement as described by Injerra. The diagram was admitted into evidence over Kennedy Mobil's hearsay objection. O'Malley tested Injerra's vehicle and discovered that when the engine was running and the driver's side door was slammed shut, the transmission lever would move from park into reverse.

Based on the position of the decedent's car and the starting position of Injerra's car as described by Injerra, O'Malley opined that the only way Injerra's car could have struck the decedent's car was if it made a very large semi-circle around another fill-up bay moving backwards. O'Malley did not measure the distance of the path of travel and stated that the 52-foot distance noted in his written report was an error.

On cross-examination, O'Malley acknowledged that his opinions regarding the movement of Injerra's vehicle were based solely on the statement he took from Injerra on the day of the accident. No physical evidence existed to his knowledge which established the initial position and travel of Injerra's vehicle. It is undisputed that no one was identified who could testify as to the precise course of movement of Injerra's automobile prior to hitting the decedent.

Doctor Richard Michaels testified for plaintiff as an accident reconstruction expert. Michaels and an assistant went to the accident scene and made various measurements. Michaels plotted the possible paths of travel of Injerra's vehicle based on the starting position of the vehicle as described to him by plaintiff's attorney. Michaels opined that the speed of a vehicle moving at idle speed (without the accelerator pedal depressed) is between two and five miles per hour depending on the weight of the vehicle. Michaels testified that the longest possible path of travel was 245 feet and the shortest was 137 feet. The distance of the probable path of travel was an average of the longest and shortest, or 190 feet. Using those distances, Michaels calculated the minimum and maximum time that it would take Injerra's car to travel from the starting point to where the accident occurred. At the fastest possible speed of travel and the shortest possible path of travel, it would take 18 seconds, and at the slowest speed it would take 82 seconds.

On cross-examination, Michaels stated that he reached his opinions and sketched his diagram before he read the police reports containing Injerra's statements as to what occurred. Michaels admitted that he had no personal knowledge regarding whether Injerra's vehicle was in park, reverse, neutral, or drive when he exited the vehicle or whether the engine was running at the time. He also admitted that he did not know for certain how much time elapsed between

the time Injerra's car started moving and the time it struck the decedent. Nor did he know for certain the precise distance Injerra's car traveled, where the car was positioned before it started moving, or whether it encountered anything in its path that may have altered its course. Michaels acknowledged that he was only asked to assume the vehicle began close to the garage near the air pump and came into contact with the decedent's vehicle.

At the close of plaintiff's case in chief, Kennedy Mobil made a motion for a directed verdict, raising the same argument it made in its summary judgment motion and contending also that the admissions of Injerra regarding the starting point and path of movement of his car were inadmissible against it on the basis of hearsay and that without this evidence, plaintiff could not show that it had any opportunity to avert the accident. The trial court directed the verdict in Kennedy Mobil's favor on the latter ground.

██ █ Plaintiff contends that the trial court erred in granting Mobil's motion for summary judgment because the affidavit of her expert, suggesting that Injerra's car traveled a distance greater than the car in *Anderson,* created a genuine issue of material fact as to whether Mobil was negligent. According to plaintiff, the allegedly greater distance meant there was a heightened opportunity to warn the decedent and to avert his injuries. Plaintiff further maintains that because no evidence was presented regarding the design of the service station that could provide a basis for deeming the design of the leased premises reasonably safe, it was error for the trial court to resolve the issue by summary judgment. As stated, the trial court resolved the motion in Mobil's favor solely on the basis that, under *Anderson,* Mobil owed no duty to the decedent to protect him from the type of harm he suffered as a result of the negligent conduct of Injerra. We agree with the trial court and conclude that summary judgment for Mobil was proper.

██ Furthermore, for the reasons which follow, we hold that Kennedy Mobil also owed no such duty to the decedent, and accordingly affirm the directed verdict for Kennedy Mobil. It is well settled that a court of review may sustain a trial court's judgment on any grounds supported by the record. (*Meister v. Henson* (1993), 253 Ill. App. 3d 619, 625 N.E.2d 404.) Thus, although the trial court declined to direct the verdict in Kennedy Mobil's favor on the basis of lack of duty, it is within this court's authority to affirm on that basis, and we do so now.

In order to recover in a negligence action, a plaintiff must establish that the defendant owed him a duty of care, that the defendant breached that duty, and that the plaintiff's injury proximately resulted from such breach. (*Rowe v. State Bank* (1988), 125 Ill. 2d

203, 531 N.E.2d 1358.) Although the issues of breach of duty and proximate cause are usually factual matters to be resolved by the trier of fact, the issue of whether a duty exists and the scope or range of protection of that duty are questions of law to be resolved by the court. *Kurtz v. Wright Garage Corp.* (1994), 262 Ill. App. 3d 1103, 635 N.E.2d 897; *Taake v. WHGK, Inc.* (1992), 228 Ill. App. 3d 692, 592 N.E.2d 1159.

In determining whether a duty exists in a particular case and in ascertaining the scope of that duty, a court "must weigh the foreseeability that defendant's conduct will result in injury to another and the likelihood of an injury occurring, against the burden to defendant of imposing a duty, and the consequences of imposing this burden." (*Ziemba v. Mierzwa* (1991), 142 Ill. 2d 42, 47, 566 N.E.2d 1365, 1366-67; *Maschhoff v. National Super Markets, Inc.* (1992), 230 Ill. App. 3d 169, 595 N.E.2d 665.) Like the plaintiff in *Anderson*, the decedent here "had the implied, if not express, invitation to enter defendants' premises for a purpose connected with defendants' business. By purchasing gasoline from defendants, [the decedent] was serving both [his] own as well as defendants' interests." (*Anderson*, 132 Ill. App. 3d at 582, 478 N.E.2d at 12.) Thus, the decedent was a business invitee to whom defendants owed a duty of reasonable care. *Anderson*, 132 Ill. App. 3d 580, 478 N.E.2d 10.

We agree with defendants that this general duty of reasonable care did not extend to the risk encountered by the decedent when Injerra's unattended car rolled toward him and ultimately struck him. To establish the reasonable foreseeability of an injury, "the plaintiff must show more than that the defendant could have foreseen that the event was conceivable or merely possible; rather, he must show that the event was 'objectively reasonable to expect.' " (*Hinojosa v. City of Chicago Heights* (1988), 166 Ill. App. 3d 319, 325, 519 N.E.2d 976, 980.) Moreover, "reasonable foreseeability must be judged by what was apparent to defendant at the time of the complained-of conduct, and not by what may appear through hindsight." *Davis v. Allhands* (1994), 268 Ill. App. 3d 143, 151, 643 N.E.2d 856, 861.

In *Anderson*, a case factually and procedurally similar to the present case, the plaintiff brought a negligence action against the owner and operators of a gasoline service station after an unattended vehicle struck her while she was filling her car's gas tank on the gas station premises. Like the decedent here, the plaintiff was standing behind her car pumping gasoline at a self-service island. Another vehicle pulled up and stopped approximately five feet behind her. The driver of this second car left the car to prepay for gasoline. Although the driver stated that she shifted her car to the "park" position,

when she exited the car she left the engine running and had not engaged the emergency brake. Seconds later, the plaintiff heard the sound of tires rolling toward her from behind. She looked over her shoulder and saw the unattended vehicle coming closer. The front bumper of the car struck the plaintiff's knees, pinning her between the two vehicles.

The plaintiff in *Anderson* contended that the service station owner and operators breached a legal duty to protect her by exposing customers to dangerous vehicles with no supervision by their agents or servants and by permitting an unattended vehicle to be left with its motor running and gear-shift apparatus in or near the "drive" position, at a point directly behind the plaintiff. (*Anderson*, 132 Ill. App. 3d at 581, 478 N.E.2d at 12.) The owner and operators of the service station filed a joint motion for summary judgment alleging that they owed no duty to the plaintiff. The trial court granted the motion, and this court affirmed, holding that the owner and operators did not owe a duty to protect the plaintiff from the type of harm she suffered. Because the plaintiff had offered no evidence of prior similar accidents on the service station premises that would have served as notice to defendants that such accidents were possible, the court held that the plaintiff's accident was not reasonably foreseeable. The court noted further that posting signs warning customers to stop their engines fulfilled the defendants' duty to protect the plaintiff from the "independent, unforeseeable act of negligence which caused her injuries." (*Anderson*, 132 Ill. App. 3d at 583, 478 N.E.2d at 13.) The court held that under Illinois law, the defendants had a right to assume that their warnings and instructions would not only be read, but also carried out. (*Anderson*, 132 Ill. App. 3d 850, 478 N.E.2d 10.) Finally, the court reiterated that " '[n]o man can be expected to guard against harm from events which are not reasonably to be anticipated at all, or are so unlikely to occur that the risk, although recognizable, would commonly be disregarded.' " *Anderson*, 132 Ill. App. 3d at 583, 478 N.E.2d at 13, quoting W. Prosser, Torts § 31, at 146 (4th ed. 1971).

In the present case, Suesuntisook testified that no accidents involving motor vehicles, let alone one even remotely similar to the one involving the decedent, had occurred on the service station premises in the 20 years he had operated it. Moreover, Mobil had affixed several visible signs at each gas pump warning motorists to stop their engines while outside of their cars. Injerra testified at his deposition that he was aware of the danger of leaving a car engine running while the car was unattended and had observed signs similar to those posted by Mobil at other service stations prior to the accident.

To require Mobil to design the service station so that employees in the business office had an adequate view of areas of the station used by customers or to require it to provide electronic surveillance devices to achieve that end, all for the purpose of preventing an accident like the one which occurred here, would place an unwarranted burden on Mobil, particularly since the circumstances here indicate that such an accident is not one which was "objectively reasonable to expect." (*Benner v. Bell* (1992), 236 Ill. App. 3d 761, 766, 602 N.E.2d 896, 899.) That the accident which occurred here was conceivable or even possible is insufficient to extend Mobil's duty of care to encompass such a risk. To hold Mobil to such a duty would be to impose on it a general duty to anticipate and guard against the negligence of third parties. In *Ziemba* (142 Ill. 2d at 52, 566 N.E.2d at 1369), our supreme court held that this was an "intolerable burden." For these reasons, we conclude that summary judgment in favor of Mobil on the basis of lack of duty was proper.

We believe the same reasoning also holds true with respect to Kennedy Mobil. We acknowledge the one distinction between this case and *Anderson,* namely, that the car which struck the plaintiff in *Anderson* was only five feet from her when it began to roll, whereas here, the distance between the starting point of Injerra's car and the place where the decedent was hit was considerably longer. Even were we to accept plaintiff's evidence that Injerra's car rolled a minimum of 18 seconds before striking the decedent, we nevertheless cannot conclude that Kennedy Mobil's duty of care extended to the risk encountered by the decedent. It is undisputed that not one person saw Injerra's car rolling unattended toward the decedent: not Injerra, not any other customer on the premises, not even the decedent himself. Nonetheless, plaintiff requests this court to impose on Kennedy Mobil the duty to have maintained constant vigilance over the premises by having an attendant on duty whose job it was to monitor and manage vehicles on the premises. Plaintiff maintains that had such an attendant been in place at the time of the accident, the attendant would have seen Injerra's car rolling unattended toward the decedent and the accident would have been avoided. We find this to be mere speculation, particularly since no other individual who was near the scene at the time of the accident was able to see what happened.

As previously stated, Suesuntisook's affidavit established that there had never been an accident similar to the collision between Injerra's car and the decedent in the 20 years he had operated Kennedy Mobil. Moreover, Injerra knew that leaving his car engine running while not in the car was dangerous. As the supreme court noted in

*Ziemba,* "[t]he underlying rationale for holding a landowner liable for injuries occurring as a result of conditions on his land is that the landowner is in the best position to prevent the injury." (*Ziemba,* 142 Ill. 2d at 53, 566 N.E.2d at 1369.) Here, however, Injerra was in the best position to prevent the injury. Thus, the typical justification for imposing liability on the possessor of land is absent here. The facts presented in this case reveal that the accident involving the decedent was a tragic, yet unforeseeable, event caused by the negligence of a third party over which Kennedy Mobil had no control. To direct Kennedy Mobil to exercise constant vigilance over its premises to prevent such unforeseeable, negligent acts like the one here from happening would place an intolerable burden on Kennedy Mobil. We cannot countenance such a result where the risk of such an event occurring is so slight. We reiterate the words of the *Anderson* court, that " '[n]o man can be expected to guard against harm from events which are not reasonably to be anticipated at all, or are so unlikely to occur that the risk, although recognizable, would commonly be disregarded.' " *Anderson,* 132 Ill. App. 3d at 583, 478 N.E.2d at 13, quoting W. Prosser, Torts § 31, at 146 (4th ed. 1971).

For the foregoing reasons, we hold that the general duty of reasonable care which Mobil and Kennedy Mobil owed to the decedent did not extend to the particular risk which the decedent encountered. In light of this holding, we need not address plaintiff's contention that the trial court erred in directing a verdict for Kennedy Mobil on the basis that Injerra's admissions regarding the starting point and movement of his vehicle were inadmissible against Kennedy Mobil.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

EGAN and RAKOWSKI, JJ., concur.